IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ANIL PRABHAKAR,<br><br>Plaintiff,<br><br>vs.<br><br>C.R. ENGLAND, INC.,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br><br>Case No. 2:12-CV-881 TS |

This matter is before the Court on Defendant's Motion for Summary Judgment. For the reasons discussed below, the Court will grant the Motion.

I. BACKGROUND

Plaintiff Anil Prabhakar began his employment with Defendant C.R. England by attending a training school, starting on May 29, 2012. Plaintiff was hired as a commercial driver on June 15, 2012, contingent on his successful completion of his training program. At the start of his employment, Plaintiff was given a copy of and trained on Defendant's policy on harassment. This policy was contained in employment manuals given to employees, was the subject of further training, and was stated on posters.

1

Prior to becoming fully certified as a solo driver for Defendant, Plaintiff participated in a "Phase Two Training" program. This phase involved a period of time in which Plaintiff served as a second-seat driver. Plaintiff was initially placed with one driver, but was later reassigned to work as a second-seat driver on a truck leased by Jack Taylor. Taylor was a trainer and Plaintiff was a student/trainee.

During their time together, Taylor used a number of racial slurs and epithets to address Plaintiff, including "rag head," "Taliban," and "sand nigger." Taylor also repeatedly threatened Plaintiff. In addition, Taylor assaulted Plaintiff on at least two occasions: once in Irving, Texas and a second time in Council Bluffs, Iowa. The assault at Council Bluffs was witnessed by another truck driver, who called the local police who, in turn, arrested Taylor. When Defendant was informed of the situation, it arranged for Plaintiff to stay in a hotel that night and then be transported back to Defendant's headquarters in Salt Lake City, Utah. After investigating the matter, Defendant terminated its contract with Taylor.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law.[1] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[2] The

---

[1] Fed. R. Civ. P. 56(a).

[2] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[3]

### III. DISCUSSION

Plaintiff brings suit against his employer, C.R. England, based on the harassment by Taylor. Plaintiff brings claims under Title VII, 42 U.S.C. § 1981, and for negligent hiring and negligent supervision.

A.    TITLE VII

Under Title VII, it is "'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'"[4] "This includes an employee's claims of a hostile work environment based on race or national origin discrimination."[5] In order to survive summary judgment, Plaintiff must show not only that there was a hostile work environment—an issue that Defendant does not challenge for the purposes of this motion—but also that there is a basis for holding Defendant liable under Title VII.[6]

> Under Title VII, an employer's liability for such harassment may depend on the status of the harasser. If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions. In

---

[3]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[4]*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting 42 U.S.C. § 2000e-2(a)(1)).

[5]*Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007).

[6]*Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007).

cases in which the harasser is a "supervisor," however, different rules apply. If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided.[7]

The first issue the Court must address is whether Taylor was Plaintiff's supervisor or merely a co-worker. Defendant contends that Taylor was not Plaintiff's supervisor, while Plaintiff argues that Taylor was.

The Supreme Court recently provided clarification as to who is a supervisor for purposes of vicarious liability under Title VII. The Court held that an employee is a supervisor "if he or she is empowered by the employer to take tangible employment actions against the victim."[8] Thus,

> an employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.*, to effect a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[9]

The Court rejected a definition of supervisor that would encompass those employees who "have the ability to direct a co-worker's labor to some ill-defined degree."[10] "The ability to direct

---

[7] *Vance v. Ball State Univ.*, 133 S.Ct. 2434, 2439 (2013).

[8] *Id*.

[9] *Id*. at 2443 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

[10] *Id*.

4

another employee's tasks is simply not sufficient."[11]  Rather, a supervisor is one who "has the power to cause 'direct economic harm' by taking a tangible employment action."[12]  "It is because a supervisor has that authority—and its potential use hangs as a threat over the victim—that vicarious liability (subject to the affirmative defense) is justified."[13]  The Supreme Court made clear that "supervisor status will generally be capable of resolution at summary judgment" and "can very often be resolved as a matter of law before trial."[14]

Applying this standard, the Court finds, as a matter of law, that Taylor was not Plaintiff's supervisor.  The facts show that Taylor did not have the authority to either hire or fire Plaintiff, nor did he have the power to recommend firing Plaintiff.  Taylor also did not have the power to promote or demote Plaintiff.  Nor did he have the authority to recommend discipline.  Taylor did, however, direct Plaintiff's day-to-day activities during the Phase Two Training program, had the authority to recommend that Plaintiff be transferred to a different truck, and could refuse to work with Plaintiff.

The Court finds that these facts are insufficient to show that Taylor was Plaintiff's supervisor.  Plaintiff's argument rests on a definition of supervisor that was rejected by the Supreme Court in *Vance*.  Therefore, the fact that Plaintiff thought of Taylor as his supervisor and that Taylor had the ability to direct Plaintiff's day-to-day activities while in the Phase Two

---

[11] *Id*. at 2448.

[12] *Id*. (quoting *Ellerth*, 524 U.S. at 762).

[13] *Id*.

[14] *Id*. at 2449, 2450.

Training program is insufficient. "The ability to direct another employee's tasks is simply not sufficient."[15] Rather, Taylor must have had the authority to take a tangible employment action.

The only actions that come close to the standard established by the Supreme Court are Taylor's ability to recommend that Plaintiff be transferred to a different tuck and Taylor's ability to refuse to work with Plaintiff. But even these actions do not rise to the level of tangible employment actions. While reassignment may be sufficient in certain circumstances to demonstrate a tangible employment action, the reassignment must result in "significantly different responsibilities" or cause a "significant change in benefits."[16]

Thus, while Taylor could recommend that Plaintiff be transferred to a different truck and could refuse to work with Plaintiff, there is no evidence that this decision would result in significantly different responsibilities. Rather, it seems that Plaintiff would likely be reassigned to work with a different trainer, something that Plaintiff had already experienced when he was reassigned to work with Taylor. There is simply nothing to suggest that Plaintiff would have significantly different responsibilities or have a significant change of benefits if he was transferred to a different truck or Taylor refused to work with him. Therefore, the Court finds that Taylor was not Plaintiff's supervisor.

Having determined that Taylor was not a supervisor, but rather was Plaintiff's co-worker, the Court applies a negligence standard. "Under this theory of employer liability, the plaintiff must establish that the employer had actual or constructive knowledge of the hostile work

---

[15]*Id*. at 2448.

[16]*Id*. at 2443.

6

environment but did not adequately respond to notice of the harassment."[17] In making this determination, the Court "must make two inquiries: first, into the employer's actual or constructive knowledge of harassment, and second, into the adequacy of the employer's remedial and preventative responses to any actually or constructively known harassment."[18]

There is no evidence that Defendant had actual knowledge of Taylor's conduct toward Plaintiff until after it occurred. Plaintiff argues that Defendant had actual knowledge that Taylor was a violent criminal, but took no steps to protect Plaintiff's safety. Plaintiff relies on the fact that Taylor had two prior misdemeanor convictions for domestic violence, from 2004 and 2006, of which Defendant was aware when it hired Taylor in 2012. Plaintiff, however, has provided no evidence showing that Taylor's prior convictions were racially motivated or that Taylor continued to have violent tendencies. Indeed, there is no evidence that Taylor had any convictions beyond 2006. Thus, Plaintiff is unable to show any connection between Taylor's prior convictions and his conduct toward Plaintiff. Plaintiff's argument would essentially require a finding of negligence any time an employer hired a person with a criminal record that included violence and that employee created a hostile work environment. Such an argument is untenable and must be rejected.

The Court next considers the adequacy of Defendant's remedial and preventative responses to any actually or constructively known harassment. As stated, Defendant had an anti-harassment policy in place. Defendant informed its employees of the policy and provided

---

[17]*Harrison v. Eddy Potash, Inc.*, 112 F.3d 1437, 1444 (10th Cir. 1997).

[18]*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1998).

training on it.  Further, when Defendant was informed of Taylor's conduct, it arranged for Plaintiff's transportation to Utah and, shortly thereafter, terminated its relationship with Taylor. Based on these facts, no reasonable juror could find Defendant negligent.  Therefore, summary judgment is proper.

B.	42 U.S.C. § 1981

The elements under Title VII and § 1981 are the same.[19]  Therefore, because Plaintiff's Title VII claim is subject to summary judgment, the same holds true for Plaintiff's § 1981 claim.

C.	NEGLIGENT HIRING AND NEGLIGENT SUPERVISION

Defendant argues that Plaintiff's negligent hiring and negligent supervision claim is barred by the exclusive remedy provision of the Utah Workers' Compensation Act.  Plaintiff does not oppose dismissal on this ground.  Therefore, this claim will be dismissed.

IV.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 18) is GRANTED.  The hearing set for October 3, 2013, is STRICKEN.

The Clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiff and close this case forthwith.

---

[19] *Carney v. City & Cnty. of Denver*, 534 U.S. 1269, 1273 (10th Cir. 2008).

DATED September 25, 2013.

BY THE COURT:

_____
TED STEWART
United States District Judge